UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Maggie Baker,

                              Plaintiff,

                                    **Report and Recommendation**

            v.                                    16-CV-613G

Goldberg Segalla LLP,

                              Defendant.

---

## I.    INTRODUCTION

Chief Judge Frank P. Geraci has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 8.)  Pending before the Court is a motion by defendant Goldberg Segalla LLP (the "Firm") to dismiss this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Plaintiff Maggie Baker ("Baker") worked for the Firm for 12 years as a legal assistant but missed work between late September 2013 and late July 2014 because of illness.  The Firm fired her on the eve of her return to work.  In a complaint filed on July 28, 2016, Baker now accuses the Firm of deficiencies in tracking her leave time that caused a loss of benefits in violation of the Family and Medical Leave Act of 1993 ("FMLA"), Pub. L. 103–3, 107 Stat. 6 (codified as amended in scattered sections of 5 U.S.C. and 29 U.S.C.).  The Firm seeks dismissal on the basis that Baker has not pled an actual loss of benefits and that she must have used all of her FMLA leave, given the duration of her absence from work.

The Court has deemed the motion submitted on papers under FRCP 78(b).  For the reasons below, the Court respectfully recommends denying the motion.

II.     BACKGROUND

Baker's complaint is not a model of clarity, but the Court has gleaned the following from its paragraphs.[1]  Baker worked for the Firm for 12 years as a legal assistant, which would create a timeline running from approximately 2002 to mid-2014.  At least for purposes of this case, the first 10 or 11 years of Baker's employment appear to have occurred without incident; the Court knows only that, apparently for all times relevant to Baker's claims, she was eligible for benefits that included FMLA leave, short-term disability ("STD") leave, and long-term disability ("LTD").

The events that eventually led to this case started on September 23, 2013.  On that day, Baker "was seriously ill and in extreme pain." (Dkt. No. 1 at 2.)  Baker's apparently unanticipated illness prompted her to notify the Firm of the illness and to request leave time.  (*Id.*)  The complaint does not list the exact date when Baker requested leave; whether she initiated FMLA leave only or inquired about disability leave as well; or exactly when the Firm responded.  Baker has pled only that the Firm "subsequently granted FMLA leave." (*Id.*)  Given that Baker has not pled requesting any other leave and has not pled a grant or denial of any other leave, the Court infers that the Firm approved some arrangement of FMLA leave on or around September 23, 2013.  Baker has not pled whether the Firm attached any conditions to the granting of leave or whether the Firm used any particular method of accounting for FMLA leave.

In any event, Baker has pled that she did not work between September 23, 2013 and July 29, 2014.  During that time, Baker received a diagnosis of an unspecified infection from

---

[1] For the sake of brevity, the Court will refrain from repeated use of the words "alleged" or "allegedly" when discussing the allegations in the complaint.  Nothing in this Report and Recommendation will constitute a finding of fact unless otherwise noted.

methicillin-resistant *staphylococcus aureus* ("MRSA").  Treatment required a hospital stay and surgery "for a period of months which was followed by ongoing doctor appointments for this illness."  (*Id.*)  While she was out of work, Baker "was in contact with the Defendant and continued to update the Defendant as to her medical status."  (*Id.*)  Baker has not pled whether her continual contact with the Firm during her absence included any accounting of FMLA leave, any request for disability leave, or any grant or denial of disability leave.  Baker has pled only that her continual contact with the Firm during her absence included notice in January 2014 that she received a raise.

Baker's relationship with the Firm apparently came to an abrupt end in late July 2014.  Baker has not pled that the Firm gave any hint before then that it had any concerns about her continued employment.  Baker has pled only that she eventually recovered from her illness and communicated with the Firm during the week of July 14, 2014.  At that time, Baker informed the Firm "that she would return to work on August 1, 2014."  (*Id.*)  The assertive tone in the phrase "would return to work" suggests that the return date was entirely Baker's to choose; whether in fact Baker and the Firm discussed or negotiated a particular return date is not clear.  Either way, the Firm called Baker on July 29, 2014 to communicate three major facts.  First, the Firm informed Baker that she was terminated—apparently as of July 29, 2014, but Baker does not make that clear.  Second, the firm informed Baker that her FMLA leave expired some time in December 2013.  Third, the Firm informed Baker that it "did not know Plaintiff's FMLA [leave] was terminated until the day immediately prior to this call.  Additionally, Defendant's representative stated that she was made aware of the expiration of Plaintiff's FMLA leave by the Defendant's facilitation committee."  (*Id.*)  To Baker, the Firm's call "was the first time that Plaintiff was informed that her

FMLA [leave] had expired. No other notice of Plaintiff's FMLA expiration was tendered to Plaintiff. Notably, this termination occurred days before Plaintiff was to return to work." (*Id.*) Baker has not pled whether she had any communication with the Firm about the situation between July 29, 2014 and the start of this case.

Baker started this case by filing her summons and complaint on July 28, 2016. The complaint contains two claims. In the first claim, Baker accuses the Firm of discrimination in violation of the FMLA. Baker gives a clue in the first claim as to how the Firm might track FMLA leave; she asserts that she was eligible for FMLA leave in part because she worked over 1,250 hours in the 12 months preceding her request. (*Id.* at 3.) Despite pleading that the Firm granted her request for FMLA leave, Baker asserts in her first claim that she "was denied her FMLA benefits when Defendant failed to notify Plaintiff that her FMLA leave had expired and by terminating Plaintiff." (*Id.*) The assertion reads on its face like a categorical denial of FMLA leave; Baker has included no distinction between categorical denial and either partial denial or leave tracking deficient enough to create legal liability. In the second claim, Baker accuses the Firm of retaliation in violation of the FMLA. Baker believes that her termination was the retaliation and that it was retaliatory "because Defendant specifically mentioned that Plaintiff's FMLA leave had expired when notifying Plaintiff that she was terminated." (*Id.* at 4.)

The Firm filed the pending motion on August 26, 2016. The Firm argues that Baker's first claim repeats her second claim to the extent that it refers to her termination. The rest of Baker's first claim fails, according to the Firm, because "she states that she requested FMLA leave, was subsequently granted that leave, and was on leave for far more than the full twelve weeks to

which she was entitled." (Dkt. No. 5-2 at 12; *see also* Dkt. No. 7 at 5.) Notably, Baker "did not (and could not) allege that she was able to return to work after twelve weeks. Indeed, she alleged that she could not return to work until 10 months after her absence began." (Dkt. No. 7 at 6.) To the extent that Baker's first claim rests on the Firm's failure to tell her exactly when her FMLA leave expired, the Firm asserts that "there is no statutory, regulatory or judicial requirement that an employer notify an employee that she used up all of her FMLA leave." (*Id.* at 14.) The Firm urges dismissal of Baker's second claim as well. The Firm notes that it granted Baker's request for FMLA leave promptly and that Baker was out for much longer than 12 weeks. The Firm also points out Baker's own admissions that she received a raise while on leave and that the termination occurred many months after her FMLA leave would have expired. "These are not the actions of an employer with retaliatory intent." (*Id.* at 16.) Baker, according to the Firm, has pled no circumstances supporting retaliatory intent beyond the mention of the expiration of leave when the Firm called to terminate her.

     Baker opposes the pending motion in all respects. Baker urges the Court not to accept the Firm's inference that she used all of her FMLA leave; Baker notes that she pled in her complaint only that she requested and received FMLA leave in late September 2013. "Plaintiff cannot allege when her FMLA, or any other form of leave, ended because she did not know if they actually ended or, if so, when they ended." (Dkt. No. 6 at 4.) Baker points to regulations, such as 29 C.F.R. § 825.300(c)(4), that require various levels of notice to employees regarding FMLA leave; Baker argues that insufficient notice can constitute interference with FMLA rights. Baker also stands by her assertion of a causal connection between her exercise of FMLA rights and her

termination. Baker notes that her termination and the announcement that her FMLA leave had expired occurred in the same conversation (Dkt. No. 6 at 8); Baker seems to be suggesting that the two topics are sufficiently unrelated in themselves that the Firm would have had no reason to mention them in the same conversation unless it chose to connect them.

## III.    DISCUSSION

### A.    *Motions to Dismiss Generally*

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). "A short and plain statement of the claim" does not mean "a short and plain statement of the eventual jury charge for that claim" or "a short and plain recitation of the legal elements for that claim." FRCP 8(a)(2) requires plaintiffs to state, in concise but plausible fashion, what they currently think a defendant actually did to them, subject to revision during later discovery. *Beswick v. Sun Pharm. Indus., Ltd.*, No. 10-CV-357A, 2011 WL 1585740, at *5 (W.D.N.Y. Mar. 4, 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts assess Rule 12(b)(6) motions "accepting all factual allegations

6

in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted).

    B.    *Adequacy of Baker's Claims*

After reviewing Baker's complaint and the cases that the parties have cited, two aspects of the complaint stand out. The first aspect is the selective nature of the information in Baker's allegations. Baker would not have access to the Firm's human-resource records, but some information that would have been helpful to know almost certainly lies within her reach already. Having worked for the Firm for about 12 years, Baker would know whether the Firm tracks FMLA leave by calendar year or some other method. *See* 29 C.F.R. § 825.200(b). Baker would know the exact dates when she asked for and "was subsequently granted" FMLA leave. Baker would know, beyond simple eligibility, whether she took any steps to invoke any kind of leave other than FMLA leave. During the continual updates that she gave the Firm about her medical status, Baker almost certainly had some kind of discussion with the Firm about what combinations of leave or what other circumstances allowed her to be away from her job for approximately 10 months. All of the above details would have helped the Court determine the legal sufficiency of Baker's allegations that the Firm interfered with her FMLA leave or fired her for invoking it. "The rules do not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007).

Nonetheless, the second aspect of the complaint that catches the Court's attention is enough—barely—to let the case survive into discovery. That second aspect is the uncertainty

surrounding how well the Firm tracks the leave of its employees. The Firm likely has people who manage human resources, and those people likely have records confirming how the Firm tracks FMLA leave, who invokes leave, and when. *See* 29 C.F.R. § 825.200(e) ("If an employer fails to select one of the options in paragraph (b) of this section for measuring the 12-month period for the leave entitlements described in paragraph (a), the option that provides the most beneficial outcome for the employee will be used."). The Firm surely knew before July 29, 2014 that Baker had been out of work for 10 months. *See* 29 C.F.R. § 825.500(c) (requiring employers to maintain leave records that include "[d]ates FMLA leave is taken by FMLA eligible employees"). If Baker had invoked only FMLA leave for a continuous block of 12 weeks from September 23, 2013—an inference that the Firm urges the Court to make even though Baker gets the benefit of the doubt under Rule 12(b)(6)—then what was Baker's status for the remaining seven months or so of her absence from work? Did the Firm have some other arrangement with Baker to help her? Was Baker AWOL? Did some misplaced designation of leave wind up leaving Baker short of 12 full weeks as allowed under the FMLA?

If the Firm had documentary evidence that answered these questions conclusively then it likely would have asked the Court to convert the pending motion to one for summary judgment via Rule 12(d). The Firm did not do so, and the Court is left with a pleading that puts the Firm on notice about alleged irregularities in leave notice and tracking that violated the FMLA. Baker has pled, implicitly or explicitly, that the Firm did not fulfill its obligations under 29 C.F.R. § 825.300(d) to give written notice of, *inter alia*, "the amount of leave counted against the employee's FMLA leave entitlement." *Id.* § 825.300(d)(6). "Failure to follow the notice

requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." *Id.* § 825.300(e). However inartfully, Baker has alleged that she was eligible for multiple forms of leave and that errors in tracking the leave wound up denying her the full extent of her FMLA benefits—an allegation of actual loss that would elevate her case past the technical violations pled in cases such as *Smith v. Westchester County*, 769 F. Supp. 2d 448, 468 (S.D.N.Y. 2011). The allegation of actual loss from poor tracking becomes more plausible given Baker's assertion—taken as true for now—that the Firm did not even know that her FMLA leave expired until the day before the termination call. As for Baker's retaliation claim, the Firm is on notice that Baker is accusing it, again implicitly or explicitly, of playing along with an ambiguous and indeterminate leave period so long as she appeared unlikely to return, and then terminating her in retaliation for deciding to return after all. *Cf. Harper v. N.Y. City Hous. Auth.*, 673 F. Supp. 2d 174, 179 (S.D.N.Y. 2009) (denying a motion to dismiss in part because the plaintiff "alleges that her job duties and responsibilities were reduced when she returned from FMLA leave, that her job location changed, and that she was stripped of certain privileges that she had before taking FMLA leave—privileges that other employees continued to hold after she returned to work."). The record at this very early stage contains no indication that, prior to the termination call, the Firm warned Baker "that her job was in jeopardy if she did not provide more medical evidence of her disability to [the Firm's] insurance carrier." *Roberts v. Health Ass'n*, 308 F. App'x 568, 570 (2d Cir. 2009) (summary order). Perhaps discovery will substantiate Baker's allegations; perhaps discovery will uncover that Baker has suffered no prejudice or actual loss and that summary-judgment cases such as *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)

9

and *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999), will apply. *Vangas v. Montefiore Med. Ctr.*, 925 F. Supp. 2d 574, 579 (S.D.N.Y. 2013), with its somewhat more developed record of when the plaintiff was on FMLA or non-FMLA leave, might wind up applying also. It is too soon to tell. For now, Baker has presented a plausible scenario in which errors in leave tracking shortchanged her impermissibly.

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends denying the pending motion to dismiss (Dkt. No. 5.)

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); FRCP 72. "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

   */s Hugh B. Scott*
   Honorable Hugh B. Scott
   United States Magistrate Judge

DATED: January 3, 2017